IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

TYRONE K. GALDONES,          )   NO. 1:12-cv-00551 LEK/RLP
#A0211270,                   )
                             )
            Plaintiff,       )   ORDER DENYING MOTION FOR
                             )   REMAND; GRANTING MOTION TO
     vs.                     )   SCREEN COMPLAINT; AND
                             )   DISMISSING ACTION
DEP'T OF PUBLIC SAFETY,      )
SHARI KIMOTO, TODD THOMAS,   )
JODY BRADLEY, BEN GRIEGO,    )
                             )
            Defendants.      )
_____)

**ORDER DENYING MOTION FOR REMAND;**
**GRANTING MOTION TO SCREEN COMPLAINT; AND DISMISSING ACTION**

      Defendant the Hawaii Department of Public Safety ("DPS") initiated this action by filing a Notice of Removal in this court pursuant to 28 U.S.C. § 1441(c).  ECF #1.  Plaintiff Tyrone K. Galdones is a Hawaii prisoner incarcerated at the Saguaro Correctional Center (SCC), located in Eloy, Arizona. Before the court is Defendants' Motion to Screen Complaint [and Stay Proceedings], ECF #9, and Galdones's Opposition to Removal ("Motion to Remand"), ECF #10.

      Galdones's Motion for Remand is DENIED and Defendants' Motion to Screen Complaint [and Stay Proceedings] is GRANTED. For the following reasons, the Complaint and action are DISMISSED without prejudice.[1]

---

[1] The court elects to decide this matter without a hearing pursuant to the Local Rules for the District of Hawaii LR7.2(d) and Rule 78(b) of the Federal Rules of Civil Procedure.

## I. <u>BACKGROUND</u>

**A.   Procedural History**

Galdones, who is proceeding pro se, commenced this action in the state circuit court on September 26, 2012, as a Nonconforming Petition for Post-conviction Relief under Hawaii Rules of Penal Procedure 40(c)(2)(3).  Galdones alleges that SCC prison officials in Arizona violated his First and Fourteenth Amendment rights to religious freedom, retaliated against him for exercising those rights, and denied him due process at a disciplinary hearing, He further alleges that a DPS official in Hawaii failed to act when notified of these alleged deprivations. *See* Petition, Ex. A, ECF #1-2.

The state circuit court found that Galdones failed to assert a basis for post-conviction relief under Rule 40, because he "alleges neither illegality of judgment nor illegality of custody or restraint, but alleges a civil rights action or some other cause of action."  Ex. B, ECF #1-3, PageID #14; *see also*, Haw. R. Penal P. 40(c)(3).[2]  The state court therefore ordered that the action be processed as a civil proceeding.  Defendants timely removed the action.  *See* ECF #1.  Galdones opposes removal.  ECF #10.

---

[2] Rule 40(c)(3) states: "If a post-conviction petition alleges neither illegality of judgment nor illegality of post conviction 'custody' or 'restraint' but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule."

B.  **Galdones's Pleading**

Galdones names SCC Warden Todd Thomas, SCC Assistant Wardens Jody Bradley and Ben Griego, and DPS Mainland Administrator Shari Kimoto as Defendants.  Galdones alleges that, on April 25, 2012, he was practicing his native Hawaiian religion through chanting and meditation during inmate head count.  He claims that three SCC guards disrupted his chanting, and on orders of Warden Thomas, placed him in segregation.  Galdones claims that Assistant Warden Griego "manufactured charges" in a disciplinary report regarding this incident.  *See* Complt. ECF #1-2, PageID #7-9.

Galdones met with Disciplinary Hearing Officer Lieutenant Holley on May 15, 2012.  He claims that he was not allowed to call witnesses or informed of the charges against him, but that Holley nonetheless found him guilty "for practicing [his] religion, . . . cultural and heritage beliefs as a Hawaiian."  Complt. ECF #1-2 PageID #8 ¶3.  Galdones appealed this disciplinary decision two days later, on May 17, 2012, requested a visit from a native Hawaiian spiritual advisor, and requested informal and formal grievances forms from Grievance Officer Juan Valenzuela.  *Id.*, ¶6.

On May 31, 2012, Galdones received Warden Thomas's May 21, 2012, denial of his disciplinary appeal.  Officer Valenzuela gave Galdones grievance forms on or about June 6, 2012.  Galdones claims these delays impacted his ability to

timely grieve his claims.  Galdones attempted to make copies of his grievances on June 11, 2012, but did not receive those copies until June 18, 2012, allegedly delaying the grievance process further.  Galdones claims these delays are evidence of a conspiracy between Warden Thomas and the SCC librarians (who are not named), to violate his right to due process.

Galdones claims that, on June 20, 2012, Assistant Warden Bradley told him that he was not allowed to practice his own "religious protocols," because Defendant Kimoto had informed SCC officials that they must comply with DPS native Hawaiian cultural advisor Ka'iana Haili's academic curriculum.  Galdones complains that this is inconsistent with his native Hawaiian religious beliefs.

On June 21, 2012, Galdones was discharged from segregation and rehoused in an upper-bunk cell, despite allegedly having a medical note for a lower bunk.  Galdones was rehoused to general population five days later, but was still denied a lower bunk.  Galdones claims that this was done in retaliation for practicing his native Hawaiian religion.

Galdones claims that, on June 27, 2012, Assistant Warden Griego threatened him and others with disciplinary segregation if they pursued a lawsuit based on the alleged deprivation of their rights to practice their native Hawaiian religion.

Galdones claims that, on July 9, 2012, SCC Captain Sigman threatened him for having his hair braided "in a traditional Hawaiian cultural fashion," allegedly at Assistant Warden Griego's direction.  Galdones says that SCC has no policy prohibiting braids; he does not say he was disciplined for wearing braids, however.  Galdones says that, on July 11, 2011, his approved hand drawn native Hawaiian religious certificates were confiscated, suggesting this was done at Assistant Warden Griego's direction.  Galdones also complains that SCC Hawaiian school principal Sell accused him of being in possession of a book that was not logged out to him, and later charged him for the book.

Galdones alleges that Kimoto, Thomas, Griego, and Bradley violated his rights under the First and Fourteenth Amendments to the United States Constitution, article I, sections 4, 5, 20, and 22, article IX section 9, and article X section 4 of the Hawaii Constitution, and other state laws.  He seeks injunctive, declaratory, and monetary relief.

## C.   *Davis v. Corr. Corp. of America*, No. 1:11-cv-00144 LEK/BMK

Galdones is also a represented plaintiff in *Davis, et al., v. Corr. Corp. of America, et al.*, No. 1:11-cv-00144 LEK/BMK, an action that was removed from state court on March 8, 2011.  In that suit, plaintiffs ("the *Davis* Plaintiffs") are represented by attorneys from the Native Hawaiian Legal Corporation ("NHLC") on a pro bono basis.  The *Davis* Plaintiffs

assert that the Hawaii Governor, the DPS Director, and the Corrections Corporation of America ("CCA") ("the *Davis* Defendants"), in their official capacities, are enforcing a policy, or engaging in a practice, that prevents the *Davis* Plaintiffs from practicing their native Hawaiian religion, and that gives preference to inmates who practice other religions. The *Davis* Plaintiffs allege that this policy or practice violates their rights under the First and Fourteenth Amendments and article I, sections 4 and 5, and article XII, section 7 of the Hawaii Constitution.  They seek injunctive, declaratory, and monetary relief.

On July 5, 2012, more than a year after removal and after the date for adding parties or claims had passed, the *Davis* Plaintiffs moved to file a supplemental Complaint, adding Galdones as a party-plaintiff and proposed class representative. *See* Mot. to File Supplemental Complt., ECF #110.  The proposed supplemental Complaint alleged substantially similar First and Fourteenth Amendment claims against the *Davis* Defendants regarding the denial of Galdones's right to exercise his native Hawaiian religion, and added claims alleging that Galdones was disciplined in retaliation for exercising his rights to petition the court and practice his religion under the First Amendment. The supplemental Complaint alleged no due process claims.  The supplemental Complaint named SCC Warden Todd Thomas and SCC Assistant Warden Ben Griego as new defendants; it raised no

claims against Shari Kimoto or Jody Bradley.

The *Davis* Defendants opposed the Motion, arguing, *inter alia*, that Galdones' retaliation claims were separate and distinct from those alleged in *Davis*, that the court lacked personal jurisdiction over Thomas and Griego, and that allowing the addition of Griego and Thomas as defendants would contravene one of the key factors behind the court's earlier decision denying the *Davis* Defendants' motion to change venue to Arizona: the absence of any CCA or SCC defendant who resided in Arizona. *See* Defs.' Opp'n, ECF #116.

On July 31, 2012, the court heard the *Davis* Plaintiffs' Motion to Supplement Complaint.[3]   ECF #22.   On August 13, 2012, the court granted leave to file the supplemental Complaint naming Galdones and including Galdones's substantially similar claims against CCA, DPS, and Governor Abercrombie.   *See* Order Granting in Part Pls.' Motion for Leave to File a Supplemental Complt., ECF #136.   The magistrate judge rejected the supplemental Complaint insofar as it sought to add Galdones's new retaliation claims and Thomas and Griego as defendants.   The magistrate judge concluded that adding these new claims that occurred long after the original complaint was filed, and adding new individual capacity defendants residing in Arizona would substantially change the character of the proposed class action and contravene

---

[3] The court also heard the *Davis* Plaintiffs' Motion to File a Second Amended Complaint, ECF #95, in which they sought to add Plaintiff Kalai Poaha to the action.

the court's earlier order denying a change of venue.  The court explained that Galdones could bring his new retaliation claims, that admittedly occurred in Arizona and named new individual capacity defendants who reside in Arizona, in Arizona. Approximately one month later, Galdones filed the instant Complaint in the Hawaii state court.

## II.  THE PARTIES' MOTIONS

### A.  Galdones' Motion in Opposition to Removal

A defendant may remove any civil action brought in state court over which the federal court would have original jurisdiction.  28 U.S.C. § 1441(a).  That is, a civil action that could have originally been brought in federal court may be removed from state to federal court.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  A federal court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Further, a federal court may exercise supplemental jurisdiction over closely related state law claims.  *See* 28 U.S.C. § 1367(c).

Galdones argues that 42 U.S.C. § 1997e(a), which requires that prisoners must fully-exhaust all claims through the prison's administrative grievance procedures before filing suit, does not apply to claims brought in state court.[4]  He asserts

_____

[4] Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of
                                                        (continued...)

that his "case does not come within the meaning of 42 U.S.C. § [1997] or § 1983, nor does it encompass any other federal law or incorporate state civil rights statutes."  Mot. to Remand, ECF #10 PageID #44.

Galdones's pleading, however, alleges federal constitutional violations concerning the conditions of his confinement, thus, subject matter jurisdiction is proper in this court under 42 U.S.C. § 1983.  *See* 28 U.S.C. §§ 1441, 1442. Defendants timely removed the action from state court within thirty days of receiving notice of the filing of this action. *See* 28 U.S.C. § 1446(b).  Whether Galdones is required to administratively grieve his federal and state law claims in state court is immaterial to whether he asserts a cause of action under the United States Constitution and laws.  Moreover, a prisoner's failure to exhaust does not deprive the court of jurisdiction over his case, because exhaustion is an affirmative defense, which may be waived if not raised by a defendant.  *Jones v. Bock*, 549 U.S. 199, 212 (2007).  Because the case was properly removed to federal court, Galdones's Motion for Remand is DENIED.

## C.   Defendant's Motion to Stay Action and Screen Complaint

Defendants ask the court to stay the proceedings in this action until it has screened the Complaint pursuant to 28

---

⁴(...continued)
this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).

U.S.C. §§ 1915(e)(2) & 1915A(b).  Defendants' request is GRANTED
and the Rule 16 Scheduling Order is VACATED.

### III.  <u>28 U.S.C. § 1915A and 42 U.S.C. § 1997e</u>

Under the Prison Litigation Reform Act ("PLRA"), the
court is required to review a prisoner's complaint as soon as
practicable before requiring an answer, and to dismiss the
complaint or its claims if it determines that the action is
frivolous, malicious, or fails to state a claim upon which relief
can be granted, or seeks monetary relief against a defendant who
is immune from such relief.  *See* 42 U.S.C. § 1997e(c); 28 U.S.C.
§ 1915(e)(2)(B).

A complaint fails to state a claim if it (1) lacks a
cognizable legal theory; or (2) contains insufficient facts under
a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*,
901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading
must contain a "short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P.
8(a)(2).  While Rule 8 does not demand detailed factual
allegations, "it demands more than an unadorned, the-defendant-
unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).  "Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice."  *Id.*

"[A] complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  *Iqbal*, at 678.  "Determining whether a

complaint states a plausible claim for relief [is] . . . a

context-specific task that requires the reviewing court to draw

on its judicial experience and common sense."  *Id.*  Thus,

although a plaintiff's specific factual allegations may be

consistent with a constitutional claim, a court must assess

whether there are other "more likely explanations" for a

defendant's conduct.  *Id.* at 681.

        The court must construe a *pro se* complaint liberally,

accept all allegations of material fact as true, and construe

those facts in the light most favorable to the plaintiff.  *Hebbe*

*v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  A "complaint

[filed by a pro se prisoner] 'must be held to less stringent

standards than formal pleadings drafted by lawyers.'"  *Id.*

(quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per*

*curiam*)).

## A.   Claims Against Shari Kimoto Are Dismissed

        Galdones claims that Kimoto, who is a Hawaii citizen,

is liable for his claims because (1) SCC allegedly notified her

of his discipline report twenty-four hours after it was issued,

and (2) she informed SCC officials that they "must comply with

DPS cultural adviser to SCF Ka'iana Haili to promote HIS ACADEMIC CURRICULUM." Complt., ECF #1-2 PageID #10.  This is insufficient to state a claim against Kimoto.

Galdones did not name Kimoto or allege that she had any significant involvement in the claims he raised in the *Davis* action.  He  does not assert that Kimoto supervises the SCC Warden and Assistant Wardens (and it is unlikely that he can). He does not claim that she was aware of Thomas's, Griego's, and Bradley's actions *before* they disciplined him, or that she was in a position to approve or acquiesce with their decision to discipline him, allegedly in retaliation for practicing his religion or for advocating litigation against SCC.

Rather, Galdones alleges Kimoto is responsible simply because she was allegedly notified that he had been disciplined twenty-four hours after the fact.  This does not state a constitutional claim against Kimoto.  *See Wright v. Shapirshteyn*, 2009 WL 361951, *3 (E.D. Cal. Feb. 12, 2009) (noting "the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983"); *Velasquez v. Barrios*, 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").

Nor is there any discernible constitutional violation in Kimoto's alleged direction to Thomas, Griego, and Bradley to

comply with the DPS Hawaiian cultural advisor, Ki'iana Haili's academic program.  It is apparent that Galdones named Kimoto to provide a basis for bringing this action in the Hawaii state court, rather than in Arizona where Magistrate Judge Kurren suggested that these claims should be raised.  Galdones's claims against Defendant Shari Kimoto are DISMISSED for failure to state a claim.

**B.  Due Process Claims**

To state a cause of action for a deprivation of due process, a plaintiff must first identify a liberty interest for which the protection is sought.  The Due Process Clause does not generally confer a liberty interest in freedom from state action taken within a prisoner's imposed sentence.  *Sandin v. Conner*, 515 U.S. 472, 480 (1995).  However, a state may "create liberty interests which are protected by the Due Process Clause."  *Id.* at 483–84.  A prisoner has a state-created liberty interest only when the restraint "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Keenan v. Hall*, 83 F.3d 1083, 1088 (9th Cir. 1996) (quoting *Sandin*, 515 U.S. at 484).

**1.  *Disciplinary Appeals and Grievances***

To the extent Galdones raises due process claims, as opposed to retaliation or free exercise of religion claims, for Thomas's, Griego's, and Bradley's decisions denying his disciplinary appeals or grievances, he fails to state a claim.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (citing *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding there is no liberty interest in processing inmate appeals because they have no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (holding that the existence of a grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, [a grievance procedure or appeal] does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Reviewing a prisoner's administrative appeal cannot serve as the basis for liability. *Buckley*, 997 F.2d at 495.

With respect to Galdones' claims regarding the alleged delay in receiving grievance forms and Warden Thomas's denial of his appeal, which Galdones suggests interfered with the exhaustion requirements set forth in 42 U.S.C. § 1997e(a), his claims also fail. Interference with a prisoner's attempts to exhaust a grievance give rise to a cognizable access to the court claim only if the prisoner suffers an actual injury by having his claim or action dismissed for failure to exhaust. Until such an injury actually occurs, it is pure speculation on a prisoner

plaintiff's part that his inability to exhaust will result in the loss of a claim or action.  *See e.g., Boyd v. Corr. Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (administrative remedies are exhausted when prison officials fail to timely respond to properly filed grievance); *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003) (recognizing that a remedy prison officials prevent a prisoner from utilizing is not an available remedy); *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy).  Galdones was allowed to file his supplemental Complaint raising his claims in the *Davis* action, so there is no actual injury regarding those claims.  Moreover, the court does not question whether Galdones's claims herein were fully-exhausted before he commenced this action in the state court.  Galdones has suffered no actual injury based on the alleged delay in the grievance process.

### 2. *During the Disciplinary Proceedings*

Galdones also claims that he was denied substantive due process when he was allegedly given no notice of the charges against him during his May 15, 2012, disciplinary proceedings with Lt. Holly.  Galdones also suggests that he was denied the right to call witnesses in his defense, although this claim is not explicit.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a

defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Ponte v. Real*, 471 U.S. 491, 495 (1985).  In a disciplinary proceeding where a liberty interest is at stake, due process requires that "some evidence" support the disciplinary decision.  *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  The inmate should receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Id.* at 454 (citing *Wolff*, 418 U.S. at 563-71).

Due process does not require that the inmate be allowed to confront his accusers or cross-examine witnesses, however. *Wolff*, 418 U.S. at 566-70; *Zimmerlee v. Keeney*, 831 F.2d 183, 187 n. 2 (9th Cir. 1987).  Moreover, this standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached. . . ." *Hill*, 472 U.S. at 455-56 ; *United States v. Segal*, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum).

First, to allege a violation of due process, a prisoner must establish that the disputed segregation "present[s] the type of atypical, significant deprivation in which a State might

conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. Galdones fails to allege that the conditions of his "punitive" segregation, either pre- or post-hearing, "present[ed] a dramatic departure from the basic conditions" in the general population, or more importantly, from those imposed in administrative segregation or protective custody. *See id*. at 485-86 (holding no violation of due process where thirty days in disciplinary confinement "mirrored those conditions imposed upon inmates in administrative segregation and protective custody," and did not extend the sentence). Galdones simply says that he was moved to punitive segregation, where he shared a cell with another inmate, albeit with an upper bunk assignment. He mentions that his personal electronics were taken away and he could not attend various classes. These facts do not present atypical or significant deprivations to the ordinary incidents of prison life.

Second, Galdones presented a different scenario regarding this incident in his *Davis* supplemental Complaint. There, he stated that "immediately" after he "attempted to ensure that appropriate protocols were followed during the [April 25, 2012] Hawaiian class," he "was charged with certain violations of [SCC] inmate policies [,] . . . in a written disciplinary report signed by Assistant Warden Ben Griego." No. 1:11-cv-00144 LEK, Supplemental Complt., ECF #110-3 PageID #2213, ¶91-93. In Reply to the *Davis* Defendants' Opposition to his supplemental

Complaint, Galdones said Griego "charged [him] with the offenses of 'Attempt/Conspiracy;' 'Hindering;' and 'Failure to Follow' on *May 14, 2012*."  No. 1:11-cv-00144 LEK, Reply, ECF #119, PageID #2360 (emphasis added).  The *Davis* Defendants attached Griego's report to the Opposition, and Galdones did not then contest its authenticity.  Griego's report shows that Galdones received and signed the report on May 14, 2012, the day before the hearing. *Id.* Defs.' Opp'n Ex. A, ECF 116-2 PageID #2340.  It also shows that Galdones requested three witnesses, and that two of these witnesses provided written statements in his support.  *Id*. at PageID #2340-42.

In determining a motion to dismiss, "[a] court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the [document]." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (a court may consider material that, "even if not physically attached to the complaint, . . . is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint").  Although this court need not and does not rely on this information to dismiss Galdones's due process claims, he clearly refers to Griego's disciplinary report several times in the present Complaint, his alleged failure to receive notice of the charges

*before* the hearing or present witnesses in his defense is central to his due process claims, and he did not question the authenticity of this report, or his signature on it, in *Davis*. It therefore appears that Galdones received all the process to which he was entitled at the disciplinary proceeding.

Third, in the present Complaint, Galdones asserts that he was disciplined for chanting and meditating during the prison's inmate head count on April 25, 2012 (not simply during the Hawaiian class, as he stated in *Davis*). *See* Complt., ECF #1-2 PageId #8-9. If Galdones's statement is accepted at face value, it suggests that he disrupted an obviously paramount prison security procedure: ensuring that all prisoners are accounted for in the prison. Due process only requires that a finding of guilt is supported by "some evidence" in the record. *Hill*, 472 U.S. at 455. A finding of guilt cannot be "without support" or "arbitrary," *id.* at 457, and the information that forms the basis for the decision must possess some indicia of reliability to support due process. *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Galdones himself admits to conduct that apparently interrupted prison security procedures. He therefore fails to allege sufficient facts for the court to infer that there was *no evidence* to support his charges. He does not plead sufficient factual content to nudge his due process claims from the merely "possible" to plausible, so that the court can "draw the reasonable inference" that the defendant is liable for

the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Galdones fails to state a claim for the denial of due process and these claims are DISMISSED.

## C.   Dismissal of Action

Galdones's remaining claims allege the violation of his right to freely exercise his native Hawaiian religion and retaliation for exercising those rights.  It does not appear that Galdones' acted maliciously by filing this suit in the state court.  He is proceeding pro se and it is doubtful he could have predicted that (1) the state court would reject his claims under Haw. R. Penal P. 40, (2) deem them a civil rights proceeding; and (3) Defendants would remove his action to this court. Nonetheless, he filed suit in state court despite having raised substantially similar claims in this court, and despite Magistrate Judge Kurren's admonition that his retaliation claims, while not appropriately brought in the *Davis* action, could be brought in the District of Arizona.  That reasoning applies equally to Galdones's new due process claims.

"District courts retain broad discretion to control their dockets and '[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal.'"  *Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007) (quoting *Thompson v. Hous. Auth. of City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986) (*per curiam*)).  For the following reasons, Galdones's remaining claims are DISMISSED

without prejudice.

   1.   *Claims Raised in Davis*

      "There is no abuse of discretion where a district court dismisses under § 1915([e]) a complaint 'that merely repeats pending or previously litigated claims.'"  *See e.g.*, *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995) (citations omitted)); *McWilliams v. State of Colo.*, 121 F.3d 573, 574 (10th Cir. 1997) ("Repetitious litigation of virtually identical causes of action may be dismissed under § 1915 as frivolous or malicious.") (quotation omitted); *Peoples v. Reno*, 2000 WL 1477502, *1 (6th Cir. Sept. 26, 2000); *Spagnolo v. U.S. Social Sec. Admin.*, 2012 WL 5415370 *1 (D. Haw. Nov. 5, 2012) (dismissing pro se plaintiff's suit without prejudice as nearly identical to and seeking the same relief as his earlier and still pending case).

      Even when the defendants are not identical, a court may dismiss a second suit as duplicative if the factual allegations are the same and the actions of the newly named defendants form a partial basis for the previous suit.  *See Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988) (affirming dismissal of prisoner's duplicative suit even though second suit named different defendants); *Cummings v. Mason*, 2011 WL 2745937, *2 (W.D. Mich. Jul. 13, 2011) (dismissing prisoner's duplicative complaint raising virtually identical claims as those in previous complaint, even though first complaint named numerous defendants

and second complaint named only one); *Sheppard v. Smith*, 2011 WL 2471172, *2 (E.D. Mich. Jun. 22, 2011) (dismissing prisoner's complaint as frivolous where it raised the same claims raised in prior complaint and named one of the four defendants named in the prior action); *Adams v. Legenstein*, 2009 WL 363888, *2 (D. Del. Feb. 13, 2009) (dismissing prisoner's complaint that was virtually identical to a prior suit as frivolous, although the first suit named four defendants and the second suit only two); *Hahn v. Tarnow*, 2006 WL 2160934 (E.D. Mich. Jul. 31, 2006) (dismissing  duplicative action despite the addition of new defendants, noting that "while courts require that multiple complaints do not 'significantly differ,' there is no requirement that the parties be exactly identical; instead, courts focus on the substance of the complaint").

"A court facing duplicative actions may: (1) stay the second action; (2) dismiss the second action without prejudice; (3) enjoin the parties from proceeding with the second action; or (4) consolidate the two actions." *Matubang v. City and Cnty of Honolulu*, 2010 WL 2176108, *2 (D. Haw. May 27, 2010) (quoting Team Enterprises, LLC v. Western Investment Real Estate Trust, 2008 WL 4826132, *4 (E.D. Cal. Nov. 6, 2008)); *see also Spagnolo*, 2012 WL 5415370 *3.

To the extent Galdones raises claims that are duplicative of those raised in *Davis v. Corr. Corp. of America*, No. 1:11-cv-00144 LEK, those claims are DISMISSED without

prejudice.

### 2.   *Improper Venue for Remaining Claims*

Galdones's retaliation claims, and if properly amended, due process claims, concern incidents that allegedly occurred in Arizona by Defendants employed by SCC in Arizona.  When jurisdiction is not founded solely on diversity, such as in an action brought under 42 U.S.C. § 1983, venue is proper in the district in which: (1) any defendant resides, if all of the defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) any defendant may be found, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b); *see also Ziegler v. Indian River Cnty.*, 64 F.3d 470 (9th Cir. 1995) (extensive discussion on jurisdiction); *Lee v. Corr. Corp. of America*, 525 F. Supp. 2d 1238, 1241 (D. Haw. 2007).  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

As he was told, venue for Galdones's retaliation claims, and any other claims he alleges that occurred in Arizona, by Arizona individuals, after the *Davis* action was filed, and that are separate and distinct from those claims alleged in

*Davis*, lies in Arizona.  *See* 28 U.S.C. § 1391(b).  Arizona is where the significant events or omissions material to Galdones's claims occurred, witnesses may be found, there is access to the necessary evidence, and there is a local interest in resolving the matter.  *See* 28 U.S.C. § 1406(a); *see also King v. Russell*, 963 F.2d 1301, 1305 (9th Cir. 1992).  Because Galdones present pleading contains claims that fail to state a claim, claims that are duplicative of those raised in *Davis*, and claims against improper defendants, the interests of justice do not favor transfer of this case to Arizona.  Moreover, Galdones has capably shown he has the ability to bring his claims to court; he may now do so in the District of Arizona with the benefit of this court's instructions regarding his new claims' deficiencies.

Accordingly, Galdones's individual claims are DISMISSED as discussed above without prejudice to refiling his new and non-duplicative claims in Arizona.

## IV.  CONCLUSION

(1)  Galdones's Motion for Remand is DENIED.

(2)  Defendant's Motion to Stay [and Screen Complaint] is GRANTED.

(3)  Galdones's claims against Defendant Shari Kimoto are DISMISSED without prejudice for failure to state a claim but without leave to amend in this court.

(4)  Galdones's claims against Defendants Thomas, Griego, and Bradley, alleging the violation of due process, are DISMISSED

without prejudice for failure to state a claim, but without leave to amend in this court.

(5) Galdones's claims that are duplicative to those raised in *Davis v. Corr. Corp. of America*, No. 1:11-cv-001144LEK are DISMISSED without prejudice.

(6) Galdones's retaliation claims, and claims that have been dismissed but can be properly amended and are not duplicative, are DISMISSED without prejudice for lack of venue.

(7) The Clerk of Court is DIRECTED to close the file. Any pending motions are DENIED as moot.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, November 29, 2012.



    /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

*Galdones v. Thomas, et al.*, 1:12-cv-00503 LEK-BMK, ORDER DENYING MOTION FOR REMAND; GRANTING MOTION TO CHANGE VENUE; AND DISMISSING ACTION; G:\docs\prose attys\Trsfr, Venue, Remand\2012\Galdones 12-551 lek (dny remand, grt stay for scrng).wpd